BOB L. OLSON, ESQ.
Nevada Bar No. 3783
LESLIE S. GODFREY, ESQ.
Nevada Bar No. 10229
GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway, Suite 400 North
Las Vegas, Nevada 89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002
olsonb@gtlaw.com
godfreyl@gtlaw.com
*Attorneys for Bank of North Las Vegas*

Electronically Filed September 14, 2011

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re<br><br>VENTO FAMILY TRUST,<br><br>Debtor. | Case No. BK-S-10-33909-MKN<br><br>Chapter 11<br><br>**BANK OF NORTH LAS VEGAS' OBJECTION TO DEBTOR'S DISCLOSURE STATEMENT**<br><br>**Hearing Date: September 28, 2011**<br>**Hearing Time: 9:30 a.m.** |

Bank of North Las Vegas ("Bank of NLV"), by and through its counsel, the law firm of Greenberg Traurig, LLP, hereby submits this objection ("Objection") to Debtor's Disclosure Statement [Dkt 95] which accompanies the Debtor's Plan [Dkt. 94] on the grounds that the Disclosure Statement fails to provide adequate information about the Debtor's Plan of Reorganization (the "Plan") as required by § 1125 of Title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code").

This Objection is made and based upon the following points and authorities, the pleadings and papers on file with the Court, the Declaration of Bob L. Olson in Support of Bank of North Las Vegas' Objection to Debtor's Disclosure Statement ("Olson Declaration") being submitted herewith, and any oral argument of counsel the Court may entertain at the hearing set for the date and time noted above.

-1-

*LV 132478.010100 419,528,523.1*

Debtor did not file any declarations in support of its pleadings, which generally lack evidentiary support, and Debtor failed to meet its burden of proof with respect to the Disclosure Statement. For those reasons and the reasons set forth below, Bank of NLV respectfully requests the Court enter an Order finding that Debtor's Disclosure Statement does not contain "adequate information" as required by 11 U.S.C. § 1125.[1]

## MEMORANDUM OF LAW AND POINTS AND AUTHORITIES

### I.    INTRODUCTION

Section 1125 of the Bankruptcy Code requires a Disclosure Statement to provide "adequate information" which a creditor can review and make an informed judgment when voting for or against the Debtor's Plan. The Disclosure Statement fails to provide "adequate information" as required by section 1125 of the Bankruptcy Code. A cursory review of the Disclosure Statement by an unwary creditor is not sufficient to reveal the depth of its deficiencies.

The most glaring omissions from Debtor's Disclosure Statement are the following:

1. <u>Debtor does not list its interests in various LLCs</u>. Debtor is believed to operate a number of businesses through various LLCs. Debtor's Disclosure Statement does not even mention those LLCs or the income generated by those LLCs.

2. <u>Debtor does not mention its properties in Mexico</u>. Debtor's original statements disclosed an ownership interest in two properties in Mexico, both of which Debtor owns free and clear of claims. Those properties were estimated to be worth $2,700,000 on May 30, 2009, and Debtor scheduled them as being worth only $800,000 on January 10, 2011. [Dkt 11, p. 7]. One of the properties is a vacant lot estimated to be worth $700,000 and the other is a beach front residence of between 5,000 and 6,000 square feet estimated (that his family has not visited for two and one-half years) to be worth $2,000,000 in 2009. Mr. Vento testified that he was given a sales price of $400,000 or under $400,000 for the house. Debtor suspiciously amended its Schedule B on May 24, 2011, to omit a reference to either of the Mexican properties. [Dkt. 54]. *See* Olson Declaration, **Exhibit 1** at p. 62, lns. 7 - 21; p. 64, lns. 6-23. Mr. Vento also testified

---

[1] The Plan is patently unconfirmable. Bank of North Las Vegas reserves the right to raise any objection it may have to the Plan before the confirmation hearing.

-2-

*LV 132478.010100 419,528,523.1*

Greenberg Traurig LLP
3773 Howard Hughes Parkway, Suite 400 North
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

1. that he paid approximately $300,000 for the lot, he was told by an agent that it was worth approximately $50,000 to $75,000 and it is paid off. *Id*. at p. 64, ln. 24 - p. 65, ln. 18. Bank of NLV is investigating the ownership of these properties and will supplement the record if necessary.

3. <u>Debtor does disclose the value of its real property</u>. The Disclosure Statement describes a variety of real property but does not disclose to the reader the value of any of that property. Moreover, a significant portion of that real property is believed to be leased to other entities, some of which are operated by companies either the Debtor or its affiliates control. The Debtor does not adequately describe those leases. Interestingly, the Plan proposes to reject those leases. [Dkt. 94 at 11].

4. <u>The Disclosure Statement does not contain a liquidation analysis</u>. Pages 8 and 9 of the Disclosure Statement contain what purports to be a liquidation analysis of 7 of the Debtor's assets. That analysis indicates that the property is worth only $181,856.60. The analysis omits all of the business properties the Debtor owns as well as the other assets debtor owns such as the Mexican Properties and various interests in business entities.

5. <u>Debtor fails to disclose transfers it made to a self-settled spendthrift trust less than two years before filing for bankruptcy</u>. In May of 2009, Carmine and Anne Vento (the "Ventos"), who are the beneficiaries of Debtor, formed the Vento Management Trust which is a self-settled spendthrift trust and caused Debtor to convey a number of assets to that trust including Debtor's interests in three residential lots, three residences occupied by their children, the Debtor's interests in Melino, Ltd., Carnegie Pizza, LLC, Lil Vento's, LLC, Carmine's Italian Kitchen, LLC, furniture worth an estimated $125,000, jewelry worth an estimated $120,000, and the beneficial interest in numerous deeds of trust and promissory notes. All of these transfers are avoidable pursuant to 11 U.S.C. § 548(e).

6. <u>Debtor fails to disclose the transfer of the Vento's Family Trust from Debtor to two newly created trusts</u>. In May of 2009 the Ventos also caused their residence, which was

-3-

owned by Debtor, to be transferred to the Carmine Vento Qualified Personal Residence Trust and the Ann M. Vento Qualified Personal Residence Trust, which are both spendthrift trusts. This residence is located at 1520 MacDonald Ranch Drive, Henderson, Nevada. The Clark County Assessor's records indicate that it has 10,011 square feet of living space and a garage of 1226 square feet. It is believed that the debt encumbering the Ventos' residence is approximately $800,000. There is substantial equity in the residence since the residence was estimated to be worth $4,419,000 on May 30, 2009. Mr. Vento testified that it was worth between $200 and $250 per square foot. Like the transfers to the Vento Management Trust, the transfer of the residence is also avoidable pursuant to 11 U.S.C. § 548(e).

7. <u>Debtor fails to disclose the source of the scant $12,000 contribution of new value</u>.

8. <u>Debtor fails to discuss any of the tax consequences of the plan</u>.

9. <u>Debtor grossly understates the unsecured debt</u>. The Disclosure Statement states that the unsecured claims may total up to $2,000,000 and that the creditors will receive a distribution of $240,000 or 12%. This is just wrong. On September 11, 2011, the claims register disclosed unsecured claims of $13,005,915.08 – almost seven times the amount of claims represented by the Debtor. This would result in a distribution of less than 2% to creditor, not 12%.

10. <u>The Disclosure Statement conceals millions of dollars being paid to undersecured creditors on account of their deficiency claims</u>. On its face, the Disclosure Statement states that the Debtor will pay $240,000 to general unsecured creditors. This is not true. The Plan described in the Disclosure Statement provides to pay the entire claim of numerous creditors even though their collateral is worth substantially less than the amount they are owed. For example, the Plan proposes to pay Bank of Las Vegas $5,778,000 plus interest on its four claims when, according to Debtor's amended schedules, that collateral is worth only $1,529,500! Thus, the Plan proposes a 100% distribution, with interest, to Bank of Las Vegas on its unsecured deficiency of over $4,200,000 claim while the proposing to pay Bank of NLV a paltry 2% of its unsecured

-4-

deficiency claim. The Disclosure Statement conceals this disparate treatment of creditors.

11. <u>Debtor fails to disclose that it is not ineligible for relief</u>. Debtor is a revocable personal trust. It appears that Debtor is not even eligible for relief under the Bankruptcy Code. *See* 11 U.S.C. §§ 109(a)(providing that only a "person" may be a debtor), 101(41)(defining "person" to include a "corporation"), and 101(9)(a)(v)(defining "corporation" to include a "business trust"). Under Nevada law a business trust is organized under N.R.S. Chapter 88A – something Debtor is not. *See also In re Sung Soo Rim Irrevocable Intervivos-Trust*, 177 B.R. 673 (Bankr. C.D. Cal. 1995). Moreover, Mr. Vento testified that Debtor has not engaged in business. *See* Olson Declaration, Ex. 3, p. 169. lns. 16-24.

The glaring omissions suggest that Debtor is acting in bad faith in this case. Given the significance of the matters omitted from the Disclosure Statement, the egregious preferential treatment of select creditors and the fact that Debtor is likely not even being eligible for relief, this Court should deny the Disclosure Statement rather than providing Debtor with an opportunity to amend.

## II.    LEGAL ARGUMENT

**A.    The Disclosure Statement Should Be Disapproved For Its Failure To Provide "Adequate Information" As Required By Section 1125(a)(1)**

The Ninth Circuit has held that a creditor has standing to object to the adequacy of a disclosure statement even if the inadequacy only affects another class and will not cause the creditor to change its vote because the creditor is "injured because he was denied the information he might have used in persuading other creditors to vote against the plan." *Everett v. Perez (In re Perez)*, 30 F.3d 1209, 1217 (9th Cir. 1994); *see also* 7 COLLIER ON BANKRUPTCY 1125.03[4][a] ("A better view is that any party in interest may object to the inadequacy of a disclosure statement for the reason that inadequate disclosure may deprive objecting creditors or interest holders of information they may use to persuade others to vote against the plan"). Some courts have also found the inadequacy of disclosure to be grounds for conversion or dismissal of the case. *See, e.g., In re Abijoe Realty Corp.*, 943 F.2d 121 (1st Cir. 1991).

-5-

*LV 132478.010100 419,528,523.1*

A disclosure statement may not be approved in connection with a proposed plan of reorganization unless it contains "adequate information." 11 U.S.C. § 1125(b). Information contained in a disclosure statement is "adequate" only when it is "of a kind and in sufficient detail . . . that would enable a hypothetical reasonable investor . . . to make an informed judgment about the plan . . . ." 11 U.S.C. § 1125(a)(1). Approval of a disclosure statement "involves a fact-specific inquiry into a particular plan to determine whether it possesses 'adequate information' under § 1125." *See e.g., In re Ionosphere Clubs, Inc.*, 179 B.R. 24, 29 (Bankr. S.D.N.Y. 1985). Accordingly, what constitutes "adequate information" is to be "determined by the facts and circumstances of each case in the discretion of the bankruptcy court." *In re Galerie Des Monnaise of Geneva*, 55 B.R. 253, 259 (Bankr. S.D.N.Y. 1985) (citing the legislative history of § 1125).

When considering the adequacy of the Disclosure Statement, it cannot be lost that the Debtor is attempting to immunize millions of dollars of property from the claim of creditors while attempting to make a scant $240,000 distribution to creditors holding over $13,000,000 of unsecured claims. Under these circumstances, it is incumbent on the Debtor to make immediate, complete and detailed disclosure of all relevant information relating to this Plan. After all, it is the Debtor who controls the information relating to its future business operations and proposed reorganization. The Debtor, however, has only come forward with a boilerplate document that is so bare, it denies creditors any meaningful opportunity to fairly evaluate the Plan. In the absence of adequate information, the Disclosure Statement cannot be approved, and the Debtor cannot solicit acceptances of the Plan. *See* 11 U.S.C. § 1125(b).

Courts have developed lists of information which are useful in evaluating a disclosure statement. *See, e.g., In re Scioto Valley Mortgage Co*, 88 B.R. 168, 170-71 (Bankr. S.D. Ohio 1988)(providing a typical non-exhaustive list of 19 factors - a "useful starting point" with regard to the type of information that should be addressed in a disclosure statement); *see also In re Metrocraft Publishing Services, Inc.*, 39 B.R. 567 (Bankr. N.D. Ga. 1984); 7 COLLIER ON BANKRUPTCY 1125.02[2] (15th Ed. Rev. 2008). The *Scioto* Court listed the following factors:

1. The circumstances that gave rise to the filing of the bankruptcy petition;
2. A complete description of the available assets and their value;

3.  The anticipated future of the debtor;

4.  The source of the information provided in the disclosure statement;

5.  A disclaimer, which typically indicates that no statements or information concerning the debtor or its assets or securities are authorized, other than those set forth in the disclosure statement;

6.  The condition and performance of the debtor while in Chapter 11;

7.  Information regarding claims against the estate;

8.  A liquidation analysis setting forth the estimated return that creditors would receive under Chapter 7;

9.  The accounting and valuation methods used to produce the financial information in the disclosure statement;

10. Information regarding the future management of the debtor, including the amount of compensation to be paid to any insiders, directors, and/or officers of the debtor;

11. A summary of the plan of reorganization;

12. An estimate of all administrative expenses, including attorneys' fees and accountants' fees;

13. The collectability [sic] of any accounts receivable;

14. Any financial information, valuations or *pro forma* projections that would be relevant to creditors' determinations of whether to accept or reject the plan;

15. Information relevant to the risks being taken by the creditors and interest holders;

16. The actual or projected value that can be obtained from avoidable transfers;

17. The existence, likelihood and possible success of non-bankruptcy litigation;

18. The tax consequences of the plan; and

19. The relationship of the debtor with affiliates.

*Scioto*, 88 B.R. at 170-71.

Such lists serve as a "yardstick against which the adequacy of disclosure may be measured," but the precise information required will be governed by the particular facts of each case. *In re Dakota Rail, Inc.*, 104 B.R 138, 142-43 (Bankr. D. Minn. 1989) ("[D]isclosure of the

listed information may be insufficient or excessive in the context of any given case."). A disclosure statement must not only contain adequate information but it also cannot include inaccurate, deceptive or misleading statements, "including false information is a more serious matter than a mere lack of information." *Computer Task Group, Inc. v. Brotby (In re Brotby)*, 303 B.R. 177, 193-94 (B.A.P. 9th Cir. 2003). Full disclosure is important so that parties "can cast an informed vote." *In re Scioto Valley Mortg. Co.*, 88 B.R. 168, 172 (Bankr. S.D. Ohio 1988).

Applying this yardstick to this case, it is clear that the Debtor's Disclosure Statement is woefully inadequate. The only *Scioto* factors that the Disclosure Statement contains are the disclaimer (factor 5) and a description of the plan (factor 11). The other factors are either not contained in the Disclosure Statement or are very misleading.

**1. The Disclosure Omits Numerous Fraudulent Transfers Debtor Recently Made.**

It cannot be disputed that a debtor with knowledge of avoidable pre-petition transfer must disclose those transfers in its disclosure statement. *Freedom Ford v. Sun Bank & Trust Co.*, 140 B.R. 585 (M.D. Tampa 1992) (where debtor in possession or Chapter 11 trustee has knowledge of prepetition transfers which may be avoided, that debtor or trustee has duty to give notice to transferee and to court through disclosure statement process of intent to seek avoidance of transfer); *In re Sierra-Cal*, 210 B.R. 168 (E.D. Cal 1997) (disclosure statement must identify all avoidable transfers of which plan proponent is aware); *In re Neutgens*, 87 B.R. 128 (D. Mont. 1987) (relevant disclosures may include the actual or projected realizable value from recovery of preferential or otherwise voidable transfers); *see also In re Reilly*, 71 B.R. 132 (D. Mont. 1987). 11 U.S.C. § 548(e) allows a trustee, which includes a debtor-in-possession, to avoid transfers to a self settled spendthrift that were made up to ten years before the Debtor filed for bankruptcy.

Mrs. Vento testified that the Debtor was originally formed for estate planning purpose. *See* Olson Declaration, **Exhibit "2"** at p. 13, lines 2 - 11. Mrs. Vento further testified that in 2003 or 2004 the Ventos were sued by a lady that fell in one of their stores and the Ventos engaged Mr. Solomon to update their estate plan to, among other things, protect their assets from the person that

-8-

*LV 132478.010100 419,528,523.1*

was suing them. *Id.* at p. 13, line 12 - p. 14, line 5. Mr. Vento's testimony is similar and candidly admits that this was done to enable him to keep his assets. *Id*. at Exhibit 1, p. 67, ln. 1 - p. 77, ln. 14.

During discovery in this case, Debtor produced a June 25, 2009 correspondence from Solomon Dwiggins & Freer, Ltd which describes in painstaking detail the May 2009 restructuring of the Ventos financial affairs, including the affairs of Debtor. A true and correct copy of the correspondence, together with attachments it contained, is collectively attached to the Olson Declaration as **Exhibit "4."** This description, which is essentially a financial blue print, identifies a large number of assets that Debtor conveyed to the Vento Management Trust – a self settled spendthrift trust – less than two years before Debtor filed for bankruptcy which Mrs. Vento described as "me and Carmine again?" See Olson Declaration, Exhibit 1, p. 24, lns. 4 - 14.

For example, the Notice of Transfer of Assets that was recorded with the Office of the Clark County Recorder on May 27, 2009, Book/Instr. No. 20090527-0002966, discloses that Debtor transferred the following assets to the Vento Management Trust, all of which had substantial equity at the time of the transfer:

1. Three vacant lots on San Papino Court, Henderson, Nevada.[2]
2. 362 San Papino Court, Henderson, Nevada.[3]
3. 373 San Papino Court, Henderson, Nevada.[4]
4. 1362 Crystal Hill Lane, Unit 2, Henderson, Nevada.[5]
5. Melino, Ltd., a Nevada limited liability company.
6. Carnegie Pizza, LLC, a Nevada limited liability company.
7. Lil Vento's, LLC, a Nevada limited liability company.
8. Carmine's Italian Kitchen, LLC, a Nevada limited liability company.

---

[2] Mrs. Vento testified that this property as well as the two residences on Sam Papino Court were owned by her and Carmine. *See* Olson Declaration, Ex. 2, p. 21, ln. 12 - p. 24, ln. 14.
[3] This is a 6230 square foot home for one of the Ventos' children. *See* Olson Declaration, Exhibit 5.
[4] This is another 6230 square foot home for one of the Ventos' children. *See* Olson Declaration, Exhibit 6.
[5] This was subsequently transferred to Connie Vento, another of the Ventos' children on or about November 5, 2010, less than 2 months before Debtor filed for bankruptcy. *See* Olson Declaration, Exhibit 7.

-9-

*LV 132478.010100 419,528,523.1*

A second Notice of Transfer of Assets, recorded on June 4, 2009, in Book/Instr. No. 20090604-0001665, discloses the additional transfers to the Vento Management Trust:

    9. Interest in Promissory Note executed by ISB-I, LLC.

    10. Interest in Promissory Note executed by Benny Riccardo and Robbie Y. Hardy.

    11. Interest in Promissory Note executed by Michal Katzman and Dean Kajioka.

    12. Interest in Promissory Note executed by Prieto-Solis, LLC.

In addition, Debtor produced two additional assignments, one assigning all of the household furnishings to the Vento Management Trust and the other assigning the jewelry to the Vento Management Trust. Mr. Vento testified that the Vento Management Trust's only debt is that which was secured to build the two houses on San Papino court. *See* Olson Declaration, Ex. 3, p. 186, lns. 3-17.

The fraudulent transfers did not stop there. The Ventos caused their personal residence that they owned through Debtor to be transferred to them and then to their respective Qualified Personal Residence Trusts. This transfer is very significant because it is a 10111 square foot custom home located on the golf course at MacDonald ranch[6] with an estimated value of $4,419,000 on May 30, 2009 and debt of only $825,000. Indeed, Mr. Vento testified that he received a ridiculous offer of just under $2,000,000 for the house and that he clearly has more than $550,000 of equity in the house - the maximum amount that can be claimed as exempt under Nevada law. *See* Olson Declaration, Ex. 1, p. 61, ln. 5 - p. 62, ln. 6; *see also id*. at Ex. 3, p. 130, ln. 18 - p. 132, ln. 24.

The omission of these significant transfers suggest that Debtor is trying to preserve, for the benefit of the Ventos, all of the assets Debtor previously owned while proposing to distribute $240,000 to creditors holding unsecured claims in excess of $13,000,000.

**2.    The Disclosure Statement Contains Insufficient Disclosure Of The Source Of Information, Accounting And Valuation Methods Used To Produce The Financial Information Or Pro Forma Projections And Information Relevant To The Risks Being Taken**

The Disclosure Statement should include a description of "[t]he accounting and valuation methods used to produce the financial information in the disclosure statement" and "[a]ny financial

---

[6] *See* Olson Declaration, Exhibit 8.

-10-

*LV 132478.010100 419,528,523.1*

information, valuations or pro forma projections that would be relevant to creditors' determinations of whether to accept or reject the plan." *Scioto Valley*, 88 B.R. at 170-71. In addition, the Disclosure Statement should reveal "[t]he source of the information provided in the disclosure statement." *Id.*

The Debtor does not value most of its properties, nor does it indicate the accounting and valuation methods for the projections under the Plan. A legitimate plan requires that a debtor's income projections be more than speculative and visionary. *In re Hobble-Diamond Cattle Co.*, 89 B.R. 856, 858 (Bankr. D. Mont. 1988) (citations omitted). "Speculative, conjectural, or unrealistic predictions cannot be used to predict financial progress. Factual support must be shown for the Debtor's projections." *Id.* "Generally, a disclosure statement must contain all pertinent information bearing on the success or failure of the proposals in the plan of reorganization." *In re Cardinal Congregate I*, 121 B.R. 760, 765 (Bankr. S.D. Ohio 1990); *see also Scioto Valley*, 88 B.R. at 170-71 (court disapproved disclosure statement and required, in part, "more detailed information concerning the Debtor's ability to make the payments proposed in the plan . . . all accounting and valuation methods used in the preparation of the Disclosure Statement"). Merely attaching pro forma income calculations, without showing the source or amounts of the income, to the Disclosure Statement is insufficient as a debtor must provide a detailed analysis of the projected income and expenses and identify all assumptions made in calculating those estimates. Id. at 767.

Mrs. Vento testified that she did not know who prepared these projections. *See* Olson Declaration, Ex. 2, p. 45, lns. 9 - 16.

### 3. The Disclosure Statement Does Not Contain Adequate Information With Regard To The Disclosures Required By 11 U.S.C. § 1129(a)(5)

The disclosure statement must include "[t]he disclosures required by 11 U.S.C. 1129(a)(5)." *See also Scioto Valley*, 88 B.R. at 170-71 (disclosure statement should include information regarding "[t]he relationship of the debtor with affiliates" and "[i]nformation regarding the future management of the debtor, including the amount of compensation to be paid to any insiders, directors, and/or officers of the debtor"). The Disclosure Statement does not contain any such information and seems to intentionally keep secret Debtor's affiliation with the other trusts created by the Ventos.

-11-

*LV 132478.010100 419,528,523.1*

Further, the disclosure statement must describe fully, completely, and in detail all transactions with Debtor's Insiders and, if there are no such transactions, the Debtor must so state. *In re Malek*, 35 B.R. 443 (Bankr. E.D. Mich. 1983). Courts have held that the failure to disclose relevant information in a bankruptcy case is a sufficient basis for finding bad faith in the proposal of a plan. *In re Georgetown Ltd. Partnership*, 209 B.R. 763, 769-70 (Bankr. M.D. Ga. 1997) (citing *Big Shanty Land Corp. v. Comer Properties, Inc.*, 61 B.R. 272, 281 (Bankr. N.D. Ga. 1985)); *In re Goeb*, 675 F.2d 1386, 1390 n. 9 (9th Cir. 1982). A subsequent amending of the disclosure statement to include the omitted information will not vitiate such bad faith. *Id.*

Based on Exhibit 4 to the Olson Declaration, it appears that Debtor transferred all of its assets to the Vento Management Trust and then filed bankruptcy in an apparent effort to allow Debtor to obtain a discharge and pay unsecured creditors a *de minimus* amount while at the same time leaving the Ventos indirectly in control of four custom residences, the smallest of which is in excess of 6000 square feet, and a myriad of other assets.

The Disclosure Statement should provide adequate disclosure of the relationship between the Debtor, the Ventos and the related trusts. *Cf. Dakota Rail*, 104 B.R. at 143 (disclosure statement should contain information about the relationship of the debtor with affiliates). This disclosure should include, without limitation, the equity and debt held by the Insiders in any of the Debtor, the management members and officers of the Debtor that are appointed, directly or indirectly, by the Insiders, any contracts and leases between the Debtor and Insiders, and the role that the Insiders play in the management of the Debtor.

**4.  The Disclosure Statement Does Not Satisfy The Tax Analysis Requirements Of Section 1125(a)(1) Of The Bankruptcy Code**

Section 1125(a)(1) of the Bankruptcy Code requires the Debtor to include in its Disclosure Statement a discussion of "[p]otential material federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan." 11 U.S.C. § 1125(a)(1). In this case, the Debtor has not even addressed the tax consequences of the plan it proposes. This is quite simply a dereliction of the Debtor's

-12-

duties to meaningfully provide sufficient information for a creditor to make an informed decision on the proposed plan. *See In re Zaruba*, 384 B.R. 254, 261 (Bankr. D. Alaska 2008) (failure to meaningfully address tax impact of Debtors' plan as grounds for finding plan is not feasible and denying confirmation); *Hall v. Vance*, 887 F.2d 1041(10th Cir. 1989) (Chapter 11 debtors' disclosure statement was inadequate where it did not identify tax consequences which might arise as a result of debtor's reorganization).

### 5. The Disclosure Statement Does Not Contain Adequate Information Regarding The Debtor's Assets And The Value Of The Assets

The disclosure statement must include a summary of assets. The Debtor does not adequately describe its assets, the value of those assets, or all of the leases affecting the Debtor's property. The Disclosure Statement does not contain any valuation of the Reorganized Debtor. This Court has held that a valuation of the debtor's business is required in every case where confirmation is through a nonconsensual cramdown. *In re Trans Max Technologies, Inc.*, 349 B.R. 80, 89 (Bankr. D. Nev. 2006) (*citing* 7 COLLIER ON BANKRUPTCY, ¶ 1129.04[4][a][ii] (Henry Sommers & Alan Resnick, eds., 15th rev. ed. 2006) ("[t]his component of the fair and equitable rule will require valuation of the debtor in every case in which the plan proposes to eliminate equity or any junior class of creditors").

Not only should the Disclosure Statement have a final valuation of the Reorganized Debtor, it also should contain a complete description of the Debtor's assets and their values, including the value of all of the assets Debtor transferred to other trusts controlled by the Ventos, the accounting and valuation methods used in the valuation analysis, as well as all assumptions relied upon in making the valuation. *See Dakota Rail*, 104 B.R. at 147 (citations omitted) ("Because the knowledge of a debtor's financial condition is essential before any informed decision concerning the merits of a Chapter 11 plan can be made, it is vital, if not a prerequisite, that a description of available assets, their value, and certainly their ownership be disclosed under § 1125"). Given the anticipated cramdown fight, the lack of a valuation is absolutely inexcusable and alone requires that the Disclosure Statement not be approved.

-13-

*LV 132478.010100 419,528,523.1*

This lack of valuation evidence is troubling for another reason. It appears that many of the secured creditors are to be paid the full amount of their claims without regard to the value of their collateral. For example, the August 15, 2011 amendment to Debtor's schedules states that 645 Carnegie Street is worth only $552,500 and encumbered by $2,642,000 of debt. [Dkt. 92 at 2]. Debtor's plan proposes to pay Bank of Las Vegas $2,643,000 on that claim (Class 2A) with interest. [Dkt. 95 at 6]. This is not uncommon because the August 15, 2011 amendment indicates that most of the holders of secured claims are grossly undersecured yet the plan proposes to those creditors the full amount of their secured and unsecured claims. Bank of Las Vegas is a classic example of this. Bank of Las Vegas holds four claims against the Debtor (Class 2A through 2D under the Plan). The Plan proposes to pay Bank of Las Vegas $5,778.000 plus interest when its collateral is scheduled to be worth only $1,529,500. Thus, Bank of Las Vegas is proposed to be paid its entire unsecured deficiency claims of over $4,200,000 general unsecured creditors, many of which hold deficiency claims against Debtor, are proposed to receive a distribution of less than 2%. This disparate treatment of creditors is a clear violation of 11 U.S.C. § 1122(a). The Disclosure Statement should advise all of Debtor's creditors of this preferential treatment of select undersecured creditors. The alternative, that Debtor is seeking to employ is to either force creditors to scour court records in order to discover these facts or make an uninformed decision regarding the Debtor's Plan. The Disclosure Statement conceals these facts and makes it both difficult and expensive for a hypothetical investor to determine what the value of the Debtor's assets are.

**6.  The Disclosure Statement Does Not Contain Adequate Information With Regard To A Statement Explaining How The Plan Proponent Intends To Make The Proposed Payments And The Risks Being Taken By The Creditors And Interest Holders**

The disclosure statement must include "[a] statement explaining how the proponent intends to make the proposed payments." *Scioto Valley*, 88 B.R. at 170-71 (disclosure statement should include "[a] summary of the plan of reorganization" and "[t]he anticipated future of the debtor").

The Plan contemplates that all distributions, as well as all funding for future operations, will be made exclusively from future cash receipts and then offers to make a new value contribution of $24,000 ($1,000 over 24 months). The source of the payments are not described, nor is the

-14-

source of the new value contribution.  These areas clearly are matters that must be discussed *in detail* in order for the Disclosure Statement to contain "adequate information" under section 1125(b).  *See Trans Max Technologies*, 349 B.R. at 87 (citation omitted) ("plan is necessarily predicated on . . . factually supported expectations as to the future course of business").  Moreover, it is likely that the only source of these new value contributions will be the distributions made to the Ventos from Debtor

The Disclosure Statement should also contain "[i]nformation relevant to the risks being taken by the creditors and interest holders." *In re Scioto Valley*, 88 B.R. at 170-71.  The Disclosure Statement does not have an adequate description of the risks to creditors.

### 7. The Disclosure Statement Does Not Contain Adequate Information Regarding The Proceedings To Date In The Bankruptcy Case

The disclosure statement must include "[a] summary of the proceedings to date in the bankruptcy case."  *Scioto Valley*, 88 B.R. at 170-71 (disclosure statement should include a discussion of "[t]he condition and performance of the debtor while in Chapter 11").

### III. CONCLUSION

WHEREFORE, for all of the foregoing reasons, Bank of NLV respectfully requests that the Court enter an Order (i) sustaining this Objection, (ii) finding that Debtor's Disclosure Statement is inadequate, and (iii) that denying approval of the Disclosure Statement.

DATED this 14th day of September, 2011.

GREENBERG TRAURIG, LLP

By:     */s/ Bob L. Olson*
 BOB L. OLSON, ESQ.
 Nevada Bar No. 3783
 LESLIE S. GODFREY, ESQ.
 Nevada Bar No. 10229
 3773 Howard Hughes Parkway, Suite 400 North
 Las Vegas, Nevada  89169
 *Attorneys for Bank of North Las Vegas*

Greenberg Traurig LLP
3773 Howard Hughes Parkway, Suite 400 North
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of September, 2011, a true and correct copy of the foregoing was served by the following means to the persons as listed below:

☒   a.   ECF System

STEPHANIE H. ALLEN on behalf of Interested Party STEPHANIE ALLEN
sallen@kcnvlaw.com, mtice@kcnvlaw.com

GORDON E. BYWATER on behalf of Creditor Service1st Bank of Nevada
gbywater@sgblawfirm.com

TIMOTHY S. CORY on behalf of Debtor VENTO FAMILY TRUST
tim.cory@corylaw.us

JASON C. FARRINGTON on behalf of Debtor VENTO FAMILY TRUST
jason@corylaw.us, angie@corylaw.us

DANIEL T. FOLEY on behalf of Creditor Airport Plaza Phase 3 Owners' Association
dan@dfoleylaw.com, karin@dfoleylaw.com;betty@dfoleylaw.com

ROBERT R. KINAS on behalf of Creditor BANK OF NEVADA
rkinas@swlaw.com, jmath@swlaw.com;mfull@swlaw.com;cdossier@swlaw.com;nbaig@swlaw.com;nunzueta@swlaw.com;docket_las@swlaw.com

TRACY O'STEEN on behalf of Creditor NEVADA COMMERCE BANK
tosteen@sheacarlyon.com, wapplegate@sheacarlyon.com;kculross@sheacarlyon.com;rmsmith@sheacarlyon.com;jshea@sheacarlyon.com;ltreadway@sheacarlyon.com

STEFANIE T. SHARP on behalf of Creditor City National Bank, N.A.
ssharp@rbsllaw.com, hdericco@rbsllaw.com

U.S. TRUSTEE - LV - 11
USTPRegion17.lv.ecf@usdoj.gov

JOSEPH G. WENT on behalf of Creditor BANK OF LAS VEGAS
jwent@klnevada.com, kdunn@klnevada.com;bankruptcy@klnevada.com

LISA M WILTSHIRE on behalf of Creditor FDIC as Receiver for Community Bank of Nevada
lwiltshire@mcdonaldcarano.com, cstuchell@mcdonaldcarano.com;lstewart@mcdonaldcarano.com

*/s/ Joyce Heilich*
An employee of Greenberg Traurig, LLP

Greenberg Traurig LLP
3773 Howard Hughes Parkway, Suite 400 North
Las Vegas, Nevada 89169
(702) 792-3773
(702) 792-9002 (fax)

-16-

LV 132478.010100 419,528,523.1