Justin C. Jones, Esq.
Nevada Bar No. 8519
Joseph G. Went, Esq.
Nevada Bar No. 9220
HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, Nevada 89134
Tel: (702) 669-4600
Fax: (702) 669-4650
Email: JGWent@hollandhart.com
*Counsel for Bank of Las Vegas*

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>VENTO FAMILY TRUST,<br><br>Debtor. | Bankruptcy No. BK-S-10-33909-MKN<br><br>Chapter 11<br><br>**SECURED CREDITOR BANK OF LAS VEGAS' EMERGENCY MOTION TO EXTEND DEADLINE TO MAKE § 1111(b) ELECTION**<br><br>**Hearing Date:  OST Requested**<br><br>**Hearing Time:  OST Requested** |

Secured Creditor BANK OF LAS VEGAS, a Nevada banking corporation (the "Creditor" or the "Bank"), by and through its attorneys of the law firm of Holland & Hart, respectfully file this Emergency Motion to Extend Deadline to Make § 1111(b) Election (the "Motion"). The Motion is brought because there is a disputed question of fact regarding the value of the collateral securing Creditor's claims under the loan documents described below. The value of that collateral is a critical, material fact that Creditor must know before it can be expected to make an informed § 1111(b) election. Creditor's uncertainty stems, in part, from the Debtor's moving target valuation of the collateral securing its outstanding loans to the Debtor. Creditor should be granted an extension of time for its § 1111(b) election until a time after the Court determines the value of Creditor's secured (and, thereby, its unsecured) claim. This Motion is based upon the record in these proceedings and the attached Memorandum of Points and Authorities.

5277756_1.DOCX

DATED this ___ day of October, 2011.

HOLLAND & HART LLP

By: _____
JUSTIN C. JONES, ESQ.
Nevada Bar No. 008519
JOSEPH G. WENT, ESQ.
Nevada Bar No. 009220
9555 Hillwood Drive, 2nd Floor
Las Vegas, Nevada 89134

Attorneys for Creditor
**BANK OF LAS VEGAS**

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### STATEMENT OF FACTS

The detailed factual and procedural background of this proceeding is already adequately set forth in the record. On or about September 14, the Bank filed its Objection to approval of the Debtor's Disclosure Statement on file herein as Document Number 117 (the "BLV Objection"). The BLV Objection sets forth in detail the loan agreements made between the Debtor and the Bank. Complete inclusion of all documents set forth in that record will not be repeated herein; rather, the Bank will attempt to cite only those facts necessary for the Court to rule on the Motion.

This case involves five (5) loan agreements made between the Debtor and the Bank. The five (5) loan agreements are hereafter summarized.

A.  **Loan 6300035 – The Durango Loan.**

1.  On or about May 15, 2003, Debtor executed and delivered to the Bank a Business Loan Agreement ("Durango Loan Agreement"), pursuant to which the Bank agreed to loan Debtor the original principal sum of $2,025,000.00. A true and correct copy of the Durango Loan Agreement is attached to the BLV Objection as **Exhibit 1** and incorporated herein by reference.

2.  In accordance with the Durango Loan Agreement, on or about May 15, 2003, Debtor executed and delivered to the Bank a promissory note in the original principal sum of $2,025,000.00 (the "Durango Note"). A true and correct copy of the Durango Note is attached to

5277756_1.DOCX

1  the BLV Objection as **Exhibit 2** and incorporated herein by reference.

2      3.     On or about May 15, 2003, to secure repayment of the Durango Note, Debtor executed and delivered to the Bank a deed of trust ("Durango Deed of Trust"), which was recorded on May 23, 2003, as Document No. 20030523-0002487 in the Official Records of the Clark County Recorder's Office, whereby Debtor irrevocably granted all of its right, title and interest, including all profits arising from and generated by the real property commonly known as 2940 South Durango Drive, Las Vegas, Nevada, 89117, Clark County Assessor's Parcel Number 163-09-312-005, as more fully described therein (the "Durango Property"). A true and correct copy of the Durango Deed of Trust is attached to the BLV Objection as **Exhibit 3** and incorporated herein by reference.

    4.     On or about May 15, 2003, as further security for the repayment of the Durango Note, Debtor executed and delivered to the Bank an Assignment of Rents ("Durango Assignment of Rents"), which was recorded on May 23, 2003 as Document No. 20030523-0002488 in the Official Records of the Clark County Recorder's Office, whereby Debtor irrevocably assigned all of its right, title and interest to the rents from the Durango Property, as defined therein. A true and correct copy of the Durango Assignment of Rents is attached to the BLV Objection as **Exhibit 4** and incorporated herein by reference.

    5.     On or about May 15, 2003, as further security for the repayment of the Durango Note, Debtor executed and delivered to the Bank a Commercial Security Agreement ("Durango Security Agreement"), whereby Debtor granted to the Bank a security interest in certain personal property, equipment and furniture located at the Durango Property, as more fully described therein. A true and correct copy of the Durango Security Agreement is attached to the BLV Objection as **Exhibit 5** and incorporated herein by reference.

    6.     On or about June 4, 2004, Debtor and the Bank entered into a change in terms agreement (the "June 4, 2004 Durango CIT") whereby the principal amount due under the terms of the Durango Note was increased to $2,640,000.00, and the maturity date of the Note was set at June 15, 2013. A true and correct copy of the June 4, 2004 Durango CIT is attached to the BLV Objection as **Exhibit 6** and incorporated herein by reference.

5277756_1.DOCX

7. On or about June 1, 2004, in connection with the execution of the June 4, 2004 Durango CIT, the parties executed a modification to the Durango Deed of Trust ("First Durango Deed of Trust Modification"), whereby the Durango Deed of Trust was modified to secure the payment of the increased principal amount due under the Durango Note of $2,640,000.00. A true and correct copy of the First Durango Deed of Trust Modification is attached to the BLV Objection as **Exhibit 7** and incorporated herein by reference.

8. The Durango Loan Agreement, Durango Note, Durango Deed of Trust, Durango Assignment of Rents, the Durango Security Agreement, the June 4, 2004 Durango CIT, and other documents associated with the Durango loan are hereinafter referred to as the "Durango Loan Documents."

**B.    Loan 6600015 – The Carnegie Loan.**

9. On or about April 30, 2004, Debtor executed and delivered to the Bank a Construction Loan Agreement ("Carnegie Loan Agreement"), pursuant to which the Bank agreed to loan Debtor the original principal sum of $2,500,000.00. A true and correct copy of the Carnegie Loan Agreement is attached to the BLV Objection as **Exhibit 8** and incorporated herein by reference.

10. In accordance with the Carnegie Loan Agreement, on or about April 30, 2004, Debtor executed and delivered to the Bank a promissory note in the original principal sum of $2,500,000.00 (the "Carnegie Note"). A true and correct copy of the Carnegie Note is attached to the BLV Objection as **Exhibit 9** and incorporated herein by reference.

11. On or about April 30, 2004, to secure repayment of the Carnegie Note, Debtor executed and delivered to the Bank a deed of trust ("Carnegie Deed of Trust"), which was recorded on May 3, 2004 as Document No. 20040503-0000966 in the Official Records of the Clark County Recorder's Office, whereby Debtor irrevocably granted all of its right, title and interest, including all profits arising from and generated by the real property commonly known as 645 S. Carnegie Street, Henderson, Nevada, 89012, Clark County Assessor's Parcel Number 178-30-316-004, as more fully described therein (the "Carnegie Property"). A true and correct copy of the Carnegie Deed of Trust is attached to the BLV Objection as **Exhibit 10** and incorporated herein by

5277756_1.DOCX

reference.

12. On or about April 30, 2004, as further security for the repayment of the Carnegie Note, Debtor executed and delivered to the Bank an Assignment of Rents ("Carnegie Assignment of Rents"), which was recorded on May 3, 2004 as Document No. 20040503-0000967 in the Official Records of the Clark County Recorder's Office, whereby Debtor irrevocably assigned all of its right, title and interest to the rents from the Carnegie Property, as defined therein. A true and correct copy of the Carnegie Assignment of Rents is attached to the BLV Objection as **Exhibit 11** and incorporated herein by reference.

13. On or about May 15, 2003, as further security for the repayment of the Carnegie Note, Debtor executed and delivered to the Bank a Commercial Security Agreement ("Carnegie Security Agreement"), whereby Debtor granted to the Bank a security interest in certain personal property, equipment and furniture located at the Carnegie Property, as more fully described therein. A true and correct copy of the Carnegie Security Agreement is attached to the BLV Objection as **Exhibit 12** and incorporated herein by reference.

14. On or about July 14, 2005, Debtor and the Bank entered into a change in terms agreement (the "June 14, 2005 Carnegie CIT") whereby the principal amount due under the terms of the Carnegie Note was increased to $2,800,000.00, and the maturity date of the Note was extended to October 5, 2005. A true and correct copy of the July 14, 2005 Carnegie CIT is attached to the BLV Objection as **Exhibit 13** and incorporated herein by reference.

15. On or about July 14, 2005, in connection with the execution of the July 14, 2005 Carnegie CIT, the parties executed a modification to the Carnegie Deed of Trust ("First Carnegie Deed of Trust Modification"), whereby the Carnegie Deed of Trust was modified to secure the payment of the increased principal amount due under the Carnegie Note of $2,800,000.00. A true and correct copy of the Carnegie Durango Deed of Trust Modification is attached to the BLV Objection as **Exhibit 14** and incorporated herein by reference.

16. The Carnegie Loan Agreement, Carnegie Note, Carnegie Deed of Trust, Carnegie Assignment of Rents, the Carnegie Security Agreement, the June 14, 2005 Carnegie CIT, the First Carnegie Deed of Trust Modification, and other documents associated with the Carnegie loan are

5277756_1.DOCX

1 hereinafter referred to as the "Carnegie Loan Documents."

**C.   Loan 6300060 – The Arroyo Grande Loan.**

17. On or about October 17, 2003, Debtor executed and delivered to the Bank a Business Loan Agreement ("Arroyo Grande Loan Agreement"), pursuant to which the Bank agreed to loan Debtor the original principal sum of $200,000.00. A true and correct copy of the Arroyo Grande Loan Agreement is attached to the BLV Objection as **Exhibit 15** and incorporated herein by reference.

18. In accordance with the Arroyo Grande Loan Agreement, on or about October 17, 2003, Debtor executed and delivered to the Bank a promissory note in the original principal sum of $200,000.00 (the "Arroyo Grande Note"). A true and correct copy of the Arroyo Grande Note is attached to the BLV Objection as **Exhibit 16** and incorporated herein by reference.

19. On or about October 17, 2003, to secure repayment of the Arroyo Grande Note, Debtor executed and delivered to the Bank a deed of trust ("Arroyo Grande Deed of Trust"), which was recorded on October 30, 2003, as Document No. 20031030-0002934 in the Official Records of the Clark County Recorder's Office, whereby Debtor irrevocably granted all of its right, title and interest, including all profits arising from and generated by the real property commonly known as vacant land near Horizon Ridge and Arroyo Grande, Henderson, Nevada, 89012, Clark County Assessor's Parcel Numbers 178-21-602-008 and 178-21-702-001, as more fully described therein (the "Arroyo Grande Property"). A true and correct copy of the Arroyo Grande Deed of Trust is attached to the BLV Objection as **Exhibit 17** and incorporated herein by reference.

20. The Arroyo Grande Loan Agreement, the Arroyo Grande Note, the Arroyo Grande Deed of Trust, and other documents associated with the Arroyo loan are hereinafter referred to as the "Arroyo Grande Loan Documents."

**D.   Loan 6300099 – The Spencer Loan.**

21. On or about October 12, 2004, Debtor executed and delivered to the Bank a Business Loan Agreement ("Spencer Loan Agreement"), pursuant to which the Bank agreed to loan Debtor the original principal sum of $795,000.00. A true and correct copy of the Spencer Loan Agreement is attached to the BLV Objection as **Exhibit 18** and incorporated herein by

5277756_1.DOCX

1  reference.

2  22. In accordance with the Spencer Loan Agreement, on or about October 12, 2004, Debtor executed and delivered to the Bank a promissory note in the original principal sum of $795,000.00 (the "Spencer Note"). A true and correct copy of the Spencer Note is attached to the BLV Objection as **Exhibit 19** and incorporated herein by reference.

3  23. On or about October 12, 2004, to secure repayment of the Spencer Note, Westcor 1031 Exchange 03-04921, LLC ("Westcor") executed and delivered to the Bank a deed of trust ("Spencer Deed of Trust"), which was recorded on October 28, 2004, as Document No. 20041028-0005819 in the Official Records of the Clark County Recorder's Office, whereby Westcor irrevocably granted all of its right, title and interest, including all profits arising from and generated by the real property commonly known as 6737 Spencer Street, Las Vegas, Nevada, then commonly known as Assessor's Parcel Number 177-02-213-002 (the "Spencer Property"). A true and correct copy of the Spencer Deed of Trust is attached to the BLV Objection as **Exhibit 20** and incorporated herein by reference.

24. On or about October 12, 2004, as further security for the repayment of the Spencer Note, Westcor executed and delivered to the Bank an Assignment of Rents ("Spencer Assignment of Rents"), which was recorded on October 28, 2004 as Document No. 20041028-0005820 in the Official Records of the Clark County Recorder's Office, whereby Westcor irrevocably assigned all of its right, title and interest to the rents from the Spencer Property, as defined therein. A true and correct copy of the Spencer Assignment of Rents is attached to the BLV Objection as **Exhibit 21** and incorporated herein by reference.

25. On July 18, 2005, Westcor conveyed the Spencer Property to the Debtor by grant, bargain, sale deed, specifically document number 20050718-0002735. The Spencer Property is currently known as Clark County Assessor's Parcel Number 177-02-214-006.

26. The Spencer Loan Agreement, Spencer Note, Spencer Deed of Trust, Spencer Assignment of Rents, and other documents associated with the Spencer loan are hereinafter referred to as the "Spencer Loan Documents."

E.   **Loan 6600047 – The San Papino Loan.**

5277756_1.DOCX

27.     On or about June 28, 2007, Debtor executed and delivered to the Bank a Business Loan Agreement ("San Papino Loan Agreement"), pursuant to which the Bank agreed to loan Debtor the original principal sum of $1,200,000.00. A true and correct copy of the San Papino Loan Agreement is attached to the BLV Objection as **Exhibit 22** and incorporated herein by reference.

28.     In accordance with the San Papino Loan Agreement, on or about June 28, 2007, Debtor executed and delivered to the Bank a promissory note in the original principal sum of $1,200,000.00 (the "San Papino Note"). A true and correct copy of the San Papino Note is attached to the BLV Objection as **Exhibit 23** and incorporated herein by reference.

29.     On or about June 28, 2007, to secure repayment of the San Papino Note, Debtor executed and delivered to the Bank a Construction Deed of Trust (the "San Papino Deed of Trust") securing repayment of the San Papino Note, in connection with the real property commonly known as lots 1, 2, 3, 4, 5, and 6 of San Papino Court, Las Vegas, Nevada, Clark County Assessor's Parcel Numbers 177-16-710-001, 177-16-710-002, 177-16-710-003, 177-16-710-004, 177-16-710-005, and 177-16-710-006 (the "San Papino Property"), recorded in Book 20070629 as Instrument Number 0000750 of the official records of the Clark County Recorder's Office. A true and correct copy of the San Papino Deed of Trust is attached to the BLV Objection as **Exhibit 24** and incorporated herein by reference.

30.     On or about June 28, 2007, as further security for the repayment of the San Papino Note, Debtor executed and delivered to the Bank an Assignment of Rents ("San Papino Assignment of Rents"), which was recorded on June 29, 2007 as Document No. 20070629-0000751 in the Official Records of the Clark County Recorder's Office, whereby Debtor irrevocably assigned all of its right, title and interest to the rents from the San Papino Property, as defined therein. A true and correct copy of the San Papino Assignment of Rents is attached to the BLV Objection as **Exhibit 25** and incorporated herein by reference.

31.     On or about June 28, 2007, as further security for the repayment of the San Papino Note, Debtor executed and delivered to the Bank a Commercial Security Agreement ("San Papino Security Agreement"), whereby Debtor granted to the Bank a security interest in certain personal

5277756_1.DOCX

property, equipment and furniture located at the San Papino Property, as more fully described therein. A true and correct copy of the San Papino Security Agreement is attached to the BLV Objection as **Exhibit 26** and incorporated herein by reference.

32. On August 18, 2008, Debtor and the Bank entered into a Change in Terms Agreement ("August 18, 2008 San Papino CIT"), wherein the principal amount due under the terms of the San Papino Note was reduced by $800,000.00 to $400,000.00, and the Bank agreed to release and recovey the San Papino Deed of Trust as to lots 2 and 6 only of the San Papino Property A true and correct copy of the August 18, 2008 San Papino CIT is attached to the BLV Objection as **Exhibit 27** and incorporated herein by reference.

33. Lots 2 and 6 of the San Papino Property were released and reconveyed by the Bank, as evidenced by the Deeds of Reconveyance executed in connection with the San Papino Deed of Trust, recorded in Book 20080905 as Instrument Numbers 0003696 and 0003697 of the official records of the Clark County Recorder's Office. True and correct copies of the reconveyances of lots 2 and 6 of the San Papino Property are attached to the BLV Objection as **Exhibit 28** and incorporated herein by reference.

34. On or about September 24, 2009, to further secure repayment of the San Papino Note, Carmine Vento and Ann M. Vento, as trustees of the Vento Management Trust (the "Vento Management Trust") granted to the Bank a second position deed of trust (the "San Papino Second Deed of Trust") to the Bank in connection with lots 2 and 6 of the San Papino Property, recorded in Book 20091002 as Instrument Number 0001031 of the official records of the Clark County Recorder's Office. A true and correct copy of the San Papino Second Deed of Trust is attached to the BLV Objection as **Exhibit 29** and incorporated herein by reference.

35. On or about September 24, 2009, Debtor executed a modification to the San Papino Deed of Trust (the "First San Papino Deed of Trust Modification") wherein the Vento Management Trust was added as an additional grantor thereunder. The First San Papino Deed of Trust Modification was recorded as Instrument Number 200910080001292 of the official records of the Clark County Recorder's Office. A true and correct copy of the First San Papino Deed of Trust Modification is attached to the BLV Objection as **Exhibit 30** and incorporated herein by

5277756_1.DOCX

1 reference.

2     36.    The San Papino Loan Agreement, San Papino Note, San Papino Deed of Trust, San Papino Assignment of Rents, the San Papino Security Agreement, the August 18, 2008 San Papino CIT, the Deeds of Reconveyance, San Papino Second Deed of Trust, First San Papino Deed of Trust Modification and other documents associated with the San Papino loan are hereinafter referred to as the "San Papino Loan Documents."

    37.    Each and every loan document referenced above is collectively referred to as the "Loan Documents."

    38.    The Durango Property, Carnegie Property, Arroyo Grande Property, Spencer Property, and the San Papino Property are hereinafter collectively referred to as the "Properties."

**F.    Proofs Of Claim.**

    39.    On or about April 21, 2011, Creditor filed proofs of claim in connection with the loans identified above:

    a.    Creditor filed a proof of claim [Claim No. 6-1] (the "Durango Claim") asserting a claim in an amount totaling, at least, $2,523,606.16. As provided in the Durango Loan Documents, the Durango Claim is secured by, among other things, the Durango Property and rents from the Durango Property.

    b.    Creditor filed a proof of claim [Claim No. 7-1] (the "Carnegie Claim") asserting a claim in an amount totaling, at least, $2,749,071.98. As provided in the Carnegie Loan Documents, the Carnegie Claim is secured by, among other things, the Carnegie Property and rents from the Carnegie Property.

    c.    Creditor filed a proof of claim [Claim No. 8-1] (the "Arroyo Grande Claim") asserting a claim in an amount totaling, at least, $85,261.67. As provided in the Arroyo Grande Loan Documents, the Arroyo Grande Claim is secured by, among other things, the Arroyo Grande Property and rents from the Arroyo Grande Property.

    d.    Creditor filed a proof of claim [Claim No. 9-1] (the "Spencer Claim") asserting a claim in an amount totaling, at least, $699,783.01. As provided in the Spencer Loan Documents, the Spencer Claim is secured by, among other things, the Spencer Property and rents

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Phone: (702) 669-4600 ♦ Fax: (702) 669-4650

5277756_1.DOCX

from the Spencer Property.

      e.    Creditor filed a proof of claim [Claim No. 10-1] (the "San Papino Claim") asserting a claim in an amount totaling, at least, $412,126.58. As provided in the San Papino Loan Documents, the Arroyo Grande Claim is secured by, among other things, San Papino Property and rents from the San Papino Property.

40.    The Durango Claim, Carnegie Claim, Arroyo Grande Claim, Spencer Claim, and the San Papino Claim are hereinafter referred to collectively as the "Claims."

**G.    Debtor's Valuation Of The Properties.**

41.    On January 10, 2011, the Debtor filed its Schedule A, wherein it asserted the following values of the Properties:

    a.    Carnegie Property - $3,200,000.00;

    b.    Durango Property -- $2,800,000.00;

    c.    Arroyo Grande Property - $400,000.00;

    d.    Spencer Property -- $1,200,000.00;

    e.    San Papino Property – Not listed.

*See* Docket No. 11 (Schedule A – Real Property (the "Original Schedule A"))

42.    Approximately six months later, on August 15, 2011, Debtor asserted different valuations for the Properties:

    a.    Carnegie Property -- $552,500.00;

    b.    Durango Property -- $342,000.00;

    c.    Arroyo Grande Property -- $155,000.00;

    d.    Spencer Property -- $480,000.00;

    e.    San Papino Property – Not listed.

*See* Docket No. 92 (Schedule A – Real Property – Amended (the "Amended Schedule A")).

43.    Debtor has failed to produce any information explaining or supporting its recent assertions regarding the reduction in values of the Properties, or its failure to identify the San Papino Property.

44.    Likewise, both the Chapter 11 Plan of Reorganization (the "Plan") [Docket No. 94]

1  and the Disclosure Statement to Accompany Chapter 11 Plan of Reorganization [Docket No. 95]
2  filed by Debtor are devoid of any information regarding the values of the Properties.

3        45.    A dispute exists between the Bank and the Debtor regarding the values of the
4  Properties.

## II.

## ARGUMENT

The deadline for making a § 1111(b) election is "any time prior to the conclusion of the hearing on the disclosure statement or within such later time as the court may fix." Fed. R. Bankr. P. 3014. Since the issue of the valuations of the Properties has not even been framed as yet, much less decided, Creditor does not expect that the Debtor will have any objection to this Motion. Even if Debtor does object, however, the Motion should be granted because the Debtor has still not provided Creditor with the information necessary to make an informed § 1111(b) election.

The need for an extension of time to for Creditor to make an informed § 1111(b) election is made apparent in the following example: Creditor has asserted a proof of claim totaling, at least, $2,749,071.98, secured by the Carnegie Property. Creditor believes that the Carnegie Property has an estimated value of $2,420,000.00 which results in an unsecured claim of approximately $330,000.00. Conversely, Debtor's unsupported $552,500.00 alleged valuation of the Carnegie Property would result in an unsecured claim by Creditor of approximately $2,200,000.00. Suffice it to say that, if accepted by the Court, the Debtor's most recent estimated valuation of the Carnegie Property will have a material impact on whether Creditor makes a § 1111(b) election.

Ordinarily the protections of a § 1111(b) election are considered most important to protect the creditor against the debtor stripping down a lien through a low valuation and then flipping the property post-confirmation for a quick profit. It is entirely possible that this is the Debtor's strategy in this case. It is beyond cavil that, as of January 10, 2011, Debtor valued the Property at $3,200,000.00 in the Original Schedule A. Inexplicably, on August 15, 2011, Debtor filed the Amended Schedule A reflecting a $552,500.00 Property value; thereby attempting to strip $2,647,500.00 (or 82.7%) of the Carnegie Property value.

The reorganized debtor never has to make a payment to Creditor to profit. Indeed, it has

5277756_1.DOCX

every incentive not to pay Creditor in accordance with the Plan. By simply failing to pay Creditor, thereby causing Creditor to enforce its security interest and foreclose on the Carnegie Property, available evidence suggests that the reorganized debtor will reap a substantial financial benefit. Any amount above $552,500.00 realized at a foreclosure sale will inure to the reorganized debtor's benefit absent a § 1111(b) election. If the Court accepts Creditor's evidence of the Carnegie Property's value at a valuation hearing, this scenario does not arise.

## III.

## CONCLUSION

Based upon the foregoing, Creditor respectfully requests that the Court extend the time for Creditor's § 1111(b) election with respect to all of the loans and Properties identified above until a time after the Court determines the values of each of the Properties.

DATED this 21 day of October, 2011.

HOLLAND & HART LLP

By: _____
JUSTIN C. JONES, ESQ.
Nevada Bar No. 008519
JOSEPH G. WENT, ESQ.
Nevada Bar No. 009220
9555 Hillwood Drive, 2nd Floor
Las Vegas, Nevada 89134

Attorneys for Creditor
**BANK OF LAS VEGAS**

5277756_1.DOCX